(52 South. 281.)

No. 17,910.

PITTS v. KERLEY et al.

(April 25, 1910.)

*(Syllabus by the Court.)*

HUSBAND AND WIFE (§ 273*) — COMMUNITY PROPERTY—EVIDENCE.

Plaintiff's husband, owning separately and individually, as heir of his father and mother, certain property, jointly with the coheirs, took from a third person (in the form of a sale) an assignment or conveyance of all the rights, title, and interest in said property which said third person had acquired through a deed to him from the holder of an adverse claim to its ownership.

The assignment or conveyance was made during plaintiff's marriage. The husband having died, the wife claimed an undivided half of that property as widow in community.

*Held,* that the husband by the conveyance did not acquire a new title to the property, but that he through it simply freed, for the benefit of himself and his coheirs, their separate property from adverse claims.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 273.*]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by Addie C. Pitts against S. N. Kerley and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Frank J. Looney and W. H. Scheen, for appellant. Blanchard, Barrett & Smith and Alexander & Wilkinson, for appellees.

## Statement of the Case.

NICHOLLS, J. The plaintiff, the widow of Robert L. Pitts, represents in her petition that she is the owner of and entitled to the absolute possession of the undivided one-half interest in and to the east half of the northwest quarter of section 20 in township 20 north of range 15 west, containing 80 acres, more or less, and situated in said parish of Caddo, La.; that Stephen D. Pitts acquired said described land from the United States in the year 1858; that from and through him, by his widow Mrs. Ann Pitts, the said land was acquired by Cain Turner, by deed dated April 13, 1876, which was duly recorded in Conveyance Book W, p. 202, of the records of this parish; that the said Cain Turner went into open, actual, and corporeal possession of the said above-described land under his said title; and that his possession has been transferred to petitioner by mesne conveyance.

She shows that the said Cain Turner sold said land by deed dated May 11, 1895, to J.

P. Flournoy, which deed was duly recorded in Conveyance Book 15, p. 299; that the said J. P. Flournoy sold the same to P. J. Trezevant by deed dated June 19, 1895, said deed being recorded in Book 16, p. 117; that said Trezevant resold to J. P. Flournoy by deed dated July 9, 1895, as is recorded in Conveyance Book 16, p. 128; and that the said J. P. Flournoy sold to Robert L. Pitts by warranty deed dated July 9, 1895, as is shown by deed duly recorded in Book of Conveyances 16, p. 129—all of which deeds are annexed hereto by certified copies as a part of this petition.

That she married the said Robert L. Pitts prior to his acquisition of said property in 1895, and that she was his wife at the time he acquired the same, and that the said property belonged to the community of acquêts existing between them at the time of his death, which occurred in 1905, and that as partner in community she became the owner of the undivided one-half interest therein, and that she now owns the same in indivision with the legal heirs at law of the said R. L. Pitts or their assigns, as will be shown on the trial hereof. She alleged that Sidney N. Kerley, a resident of said parish and state, and the Jeems Bayou Fishing & Hunting Club, a corporation chartered under the laws of the state of Louisiana, and of which Matt. L. Scovill is the president, and whose domicile is in the city of Shreveport, Caddo parish, La., claimed to own said property by some kind of claim or deed of record and makes adverse claims thereto, and that she is entitled to have her title to said property established, though claimed by said parties who are not in the possession of said property, and have her title and right of possession thereto recognized.

She alleges that said property is well worth the sum of $4,000.

Therefore she prays for service hereof and citation to the said S. N. Kerley and the said Jeems Bayou Fishing & Hunting Club, and, after due and legal proceedings had, she prays that her title be maintained, and that she be recognized and decreed to be the owner of the undivided one-half interest in and to the said east half of the northwest quarter, section 20, township 20, north of range 15 west, and decreed to be entitled to the full and peaceable possession thereof, and for all other orders and decrees needful, for costs, and general relief.

Defendants answered. After pleading a general denial, they averred that they are the owners and in actual possession of all of the northwest quarter of section 20, township 20 north, range 15 west, Caddo parish, La., containing 158.28 acres of land, which area necessarily embraces the east half of the northwest quarter of said section, township, and range, the land described in plaintiff's petition, which said land respondents acquired from Mrs. Sallie Austin, widow (born Pitts), on the 8th day of May, 1896, as per warranty deed, recorded in Conveyance Book 23, p. 25, of the Records of Caddo Parish, La., and from the United States government through various mesne authors one-half, and which said conveyance to respondents by the said Mrs. Sallie Pitts Austin was ratified and confirmed by Rush D. Pitts by quitclaim deed and ratification of date March 3, 1905, as will appear by reference to Conveyance Book 38, p. 500, of the Records of Caddo Parish, La., and which said conveyance to respondents from Mrs. Sallie Pitts Austin, widow, was ratified and confirmed by act of confirmation and ratification, duly signed by Mrs. Lucy Pitts Joslyn of date ——— 190—, duly recorded in Conveyance Book ———, page ———, of the Records of Caddo Parish, La., certified copies of which said acts hereinbefore referred to are hereby annexed and made part hereof.

Respondents, further answering, deny that

said east half of the northwest quarter of section 20, township 20 north, range 15 west, Caddo parish, La., or any part thereof, ever belonged to the alleged community of acquêts between plaintiff, the said Mrs. Addie C. Pitts, and Robert L. Pitts, deceased.

Respondents, further answering, specially aver that at the time of the death of said Stephen D. Pitts he left a widow in community (Mrs. Ann Pitts) and three children, namely, Rush D., Robert L., and Thomas H. Pitts.

Respondents further represent: That the said Stephen D. Pitts, Sr., died in the year 1872, and his then surviving widow (Mrs. Ann Pitts) departed this life in the year 1883, without marrying again, and leaving as her sole heirs R. L. Pitts and R. D. Pitts, her sons, and two grandchildren, Mrs. Sallie Pitts Austin and Mrs. Lucy Pitts Joslyn, sole heirs of T. H. Pitts, deceased. That there was a partition entered into by and between the heirs of Mrs. Ann Pitts and Stephen D. Pitts, Sr. That, by and with the consent of the said Rush D. Pitts and Robert L. Pitts, the said Mrs. Sallie Pitts Austin took, along with other property, as her share of the property of Stephen D. Pitts, Sr., her grandfather, and Mrs. Ann Pitts, her grandmother, the whole of the northwest quarter of section 20, township 20 north, range 15 west, Caddo parish, La., with other property. That neither the said Rush D. Pitts, nor said Robert L. Pitts, from and after the said partition, ever disputed the said Mrs. Sallie Pitts Austin's title to said northwest quarter of said section, township, and range, as aforesaid, or any part thereof, and that, when the said land was forfeited to the state for nonpayment of taxes, the said Mrs. Sallie Pitts Austin took a reconveyance from the state, by and with the consent of and at the direction of the said Rush D. Pitts and Robert L. Pitts, they, the said Rush D. and Robert L. Pitts, well knowing that the said

property at that time was set aside and conveyed to the said Mrs. Sallie Pitts Austin, and for that reason the said Rush D. Pitts subsequently ratified and confirmed the title to said land which had been made by the said Mrs. Sallie Pitts Austin, to your respondents, all of which is stated in said act of ratification and confirmation made by said Rush D. Pitts to respondents, S. N. Kerley and the Jeems Bayou Fishing & Hunting Club heretofore referred to. That the alleged conveyance from Mrs. Ann Pitts, widow of Stephen D. Pitts, Sr., to Cain Turner, referred to in plaintiff's petition, was wholly upon terms of credit. That not one dollar of the purchase price was ever paid. That the said Mrs. Ann Pitts had no right nor authority in law to convey said land to said Cain Turner, and that said Cain Turner, having paid nothing for said land, never claimed any ownership to same, and that in the alleged conveyance from Cain Turner to J. P. Flournoy the said Cain Turner declined to give any warranty deed, but only a quitclaim deed to this land and other lands, stating at the time that he had paid nothing for the said east half of the northwest quarter of section 20, township 20 north, range 15 west, Caddo parish, La., the lands described in plaintiff's petition, and claimed no interest thereon, all of which said facts were well known to Robert L. Pitts when he purchased from said Flournoy, and that the alleged conveyance taken by said Robert L. Pitts, husband of the plaintiff herein, from J. P. Flournoy, was intended simply as a redemption for the interest and benefit of the said Mrs. Sallie Pitts Austin, respondents' vendor. That said Robert L. Pitts was a party to the aforesaid partition between the heirs of Mrs. Ann Pitts and Stephen D. Pitts, Sr., and that his alleged conveyance from J. P. Flournoy was for the use and purpose of carrying out and protecting the terms of said partition, and that

126 LA.—8

the said Robert L. Pitts never asserted any claim to the said lands. That the same had been owned and held by the said Mrs. Sallie Pitts Austin and respondents since 1883 and 1899; the said Robert L. Pitts well knowing and his heirs well knowing that he was estopped by reason of said partition and his consideration therefor from asserting or claiming any interest or title in said property.

They further aver: That Benjamin and Barron took a conveyance to said land in question at a tax sale on the 3d day of June, 1889, same having been previously forfeited to the state and subsequently redeemed by respondents' vendor Mrs. Sallie Pitts Austin, and that the said Benjamin and Barron did on December 21, 1890, convey to Rush D. Pitts said land in question, and that the said Rush D. Pitts conveyed to respondents the said land, all with the view of ratifying and confirming title already made by the said Mrs. Sallie Pitts Austin to respondents.

That they have been in actual possession of said lands, paying taxes upon the same annually, and plead prescription of 3, 5, and 10 years and 20 years in bar of plaintiff's demand.

That the plaintiff has absolutely no interest or title in said property, and that her suit and pretended claim operates as a slander upon the title of respondents' title, and has largely depreciated the value of the said land and interfered with respondents' opportunity to dispose of same, and has made it necessary for respondents to employ attorneys at large expense, damaging respondents in a sum of not less than $1,000, as will be shown on the trial hereof, for which said sum respondents claim judgment in reconvention with 5 per cent. per annum interest thereon from liquidation. That plaintiff's suit be hence dismissed at her cost, and for judgment in respondents' favor, for the sum and interest set forth and claimed in reconvention.

Defendants subsequently filed a plea of estoppel, averring that on account of said verbal partition so made by and between the heirs of Ann and S. D. Pitts, and on account of the said R. L. Pitts, plaintiff's husband having taken and enjoyed and sold his interest so acquired by and through said verbal partition to other parties and on account of the direction of said R. L. Pitts to Mrs. Austin to redeem the land here in contest from the state, stating to her that it was her own, and to redeem it from the state and on account of the long recognition by the said R. L. Pitts of the ownership of said land in the said Mrs. Austin, who claimed it and exercised acts of ownership over it for many years with the express and implied assent of the said R. L. Pitts and the plaintiff, she is estopped and debarred from claiming the land here sued for, which estoppel defendant specially pleads in bar of her right to recover. Wherefore defendant prays that this plea of estoppel be sustained and for judgment as prayed for in its answer herein, and for costs and general relief.

Plaintiff pleaded the prescription of ten years against the demands of defendants. The district court rendered judgment ordering and decreeing that the claim of plaintiff set forth in her petition be rejected. It further ordered and decreed that the defendants, S. N. Kerley and the Jeems Bayou Fishing & Hunting Club, be and they are hereby declared to be the owners of the east half of the northwest quarter of section 20, township 20 north, range 15 west, Caddo parish, state of Louisiana, and that their title and possession to same be quieted. It further ordered, adjudged, and decreed that plaintiff pay all costs of this suit.

The plaintiff prays to be recognized and decreed to be the owner of the east half of the

northwest quarter of section 20 north, range 15 west. She claimed that Cain Turner acquired said land from and through Stephen D. Pitts by his widow, Mrs. Ann Pitts, on April 15, 1876; that Cain Turner sold said land to J. P. Flournoy on May 11, 1895; that J. P. Flournoy sold the same to P. J. Trezevant on June 19, 1895; that P. J. Trezevant resold said property to J. P. Flournoy on July 9, 1895; that J. P. Flournoy sold same to Robert L. Pitts (her husband) on July 9, 1895; that she married Robert L. Pitts prior to the said acquisition by him of said property on July 9, 1895. The record shows that on April 15, 1876, Mrs. Ann Pitts, widow of Stephen D. Pitts, by notarial act sold to Cain Turner the east half of the northwest quarter of section 20, township 20 north, range 17 west; also the east half of the northeast fractional quarter of the southwest fractional quarter of section 20, township 20, range 15 west, for the price of $270, payable in two notes of the purchaser, one payable January 1, 1877, the other January 1, 1878, bearing 8 per cent. interest secured as to payment by special mortgage and vendor's privilege on the property sold. That the act declared:

"That Henry Pitts, Rush D. Pitts, and Robert L. Pitts, sons and sole heirs of Stephen D. Pitts, joined in the conveyance with guarantee of title and subrogation to all rights and actions possessed by them, and relinquishing in favor of the purchaser all right, title, and interest which they might own or be entitled to in the property."

But the persons named were not in fact parties to that act and did not appear therein as recited by the notary. Cain Turner by act under private signature dated May 11, 1895, sold and quitclaimed to J. P. Flournoy, for $75 cash, one hundred and sixty acres in section 18, being the northeast quarter northeast quarter, and east half of northwest quarter of section 20, all in township 20 north, range 15 east. J. P. Flournoy on June 19, 1895, by notarial act, sold with warranty, to P. J. Trezevant, for $600 cash, the northeast

quarter of section 18 and east half of northwest quarter of section 20, township 20, range 15 west. On July 9, 1895, P. J. Trezevant resold the same property by notarial act to J. P. Flournoy for $600 cash by and with full warranty; R. L. Pitts being one of the witnesses to the act. On the same day (July 9, 1895) J. P. Flournoy by notarial act sold under full warranty, for $25 cash, to Robert L. Pitts, "all his interest or claim in and to the east half of northwest quarter of section 20, township 20 north, range 15 west."

On the 8th of May, 1889, Mrs. Sallie Pitts Austin (born Pitts), heir of T. H. Pitts, sold under full warranty and with subrogation by notarial act to Sidney Kerley, for $100 cash, the southwest quarter of section 10, township 20, range 16, and the northwest quarter of section 20, township 20, range 15. George W. Kendall was a witness to that act.

On March 3, 1905, through act before Thomas C. Barret, notary public, R. D. Pitts, as one of the three heirs of Stephen D. Pitts and Mrs. Ann Pitts, declared that he did thereby waive, relinquish, and renounce in favor of S. N. Kerley and the Jeems Bayou Fishing & Hunting Club all his rights, title, and interests in and to the following described property: "The southwest quarter of section 10, township 20, range 16," and "the northwest quarter of section 20, township 20, range 15." That the consideration of this transfer and waiver of interests was this: The said Pitts had a like waiver of interest in other lands from the heirs of Stephen D. Pitts and Mrs. Ann Pitts, and he desired to ratify and confirm the sale of that particular property by his niece, Mrs. Sallie Austin to S. N. Kerley, of date May 8, 1899 (and by the said Kerley sold or agreed to be sold to the said fishing and hunting club); his niece and the other heirs of Stephen D. Pitts and Mrs. Ann Pitts having ratified and confirmed the transfer made by him of another piece of property belonging to the succession of the said Stephen

D. Pitts and Mrs. Ann Pitts, his mother. She said Pitts further declared that, while there had been no written partition between the heirs of Stephen D. Pitts and Mrs. Ann Pitts, there was an understanding and agreement between them as to a division of the property, and that the property described in the act had been set aside to Mrs. Sallie Austin, who sold it to S. N. Kerley, and by the said Kerley it was transferred or agreed to be transferred to the Jeems Bayou Fishing & Hunting Club, and that it was his purpose and intention to thereby ratify and confirm and to waive and renounce in favor of the said Kerley and the said fishing and hunting club all rights, title, and interest in the said property.

On ———, 1908, Mrs. Lucy Pitts Joslyn (sister of Mrs. Sallie P. Austin), as one of the heirs of Stephen D. Pitts and Mrs. Ann Pitts, declared that as such she ratified and confirmed the sale made by Mrs. Sallie Pitts Austin to S. N. Kerley of "the southwest quarter of section 10, township 20, range 16," and "the northwest quarter of section 20, township 20, range 15," which sale was made on the 5th day of May, 1899, relinquishing in favor of the said S. N. Kerley and the Jeems Bayou Fishing & Hunting Club all right and interest in the said property sold by the said Mrs. Sallie Pitts Austin to said Kerley, and that it was her purpose and intention to ratify and confirm said sale. That the consideration of said ratification was the sum of $1,500 cash paid to her.

On the 4th of January, 1895, Rush D. Pitts mortgaged in favor of G. W. Kendall, for $500, "all his right, title, and interest in and to the fractional southwest quarter of section 1, township 20 north, range 16 west," and in "the northwest quarter of section 20, township 20 north, range 15 west."

On April 17, 1907, in the matter of the bankruptcy of S. D. Pitts (son of Robert L. Pitts), and on rule by the Jeems Bayou Fishing & Hunting Club v. H. H. Hackaby, Trus-

tee, the United States court rendered judgment in favor of the fishing and hunting club and against Hackaby, trustee, defendant in the rule, restraining the said trustee from selling, as the property of said estate of S. D. Pitts in bankruptcy, "the undivided one-twelfth interest in southwest fractional quarter of section 10, township 20, range 16," and "the undivided one-eighth interest" in the west half of northwest quarter of section 20, township 20 north of range 15 west.

On May 1, 1886, the sheriff of Caddo parish, ex officio tax collector, offered at tax sale for taxes for 1885, as property assessed in the name of the succession of Mrs. Ann Pitts, the fractional southwest quarter, section 10, township 20, range 16, and the northwest quarter, section 20, township 20, range 15, 230 acres; but said property was not sold for want of bidders. No purchasers having bid for the same, the property remained unsold.

On November 10, 1886, the tax collector drew up an act reciting the fact, and recorded the same on that day, declaring that he did so by virtue of section 3 of Act No. 107 of 1884. The property continued to be assessed in the name of the succession of Ann Pitts in the years from 1885 to 1891, both inclusive. On the 1st of June, 1889, the sheriff, ex officio tax collector of the parish of Caddo, offered at tax sale for taxes of 1888, "230 acres, being fractional southwest quarter of section 1, township 20 north, range 16 west," and "northwest quarter of section 20, township 20, range 15, Caddo parish," said property being assessed as belonging in the succession of Ann Pitts, and at said sale adjudicated said property to Sam Benjamin and Isaac Barron. A notarial deed was executed to the purchasers on the 3d of June, 1889, which was recorded the same day. On the 21st of May, 1890, Sam Benjamin and Isaac Barron, for $38.44, sold by notarial act to Rush D. Pitts with only, how-

ever, such title as they received, and with complete transfer and subrogation to all rights and actions against former proprietors of the property conveyed, "230 acres of land," being fractional "southwest quarter of section 1, township 20 north, range 16 west," and "northwest quarter of section 20, township 20, range 15 west."

On the trial of the case plaintiff introduced in evidence the following letter to her husband, Robert L. Pitts:

"Shreveport, La. July 12, 1880.

"Dear Mr. Pitts:

"I write to know if you can't buy the place which you are renting from my wife. The matter stands in a condition by which it can be purchased very cheap. At the time I was out of business I held two notes against Cain Turner amounting to $270.00 two hundred and seventy dollars, endorsed over to me by your mother, she having made the title direct to Cain Turner. I borrowed from John J. Dillon on the notes as collateral eighty dollars which is past due and he is speaking of suing me, in other words of foreclosing the mortgage which will make additional loss and I propose to you (not being able to raise the money myself) to buy the notes from him at $80, and foreclose yourself or let him foreclose and you attend the sale and buy it for yourself, thereby getting a sheriff's title which is the best of all titles. It is impossible for me to raise the money and I would rather you would have the place at a cheap price than any one else.

"Answer.

"Your friend,        Ed. M. Austin."

The plaintiff introduced in evidence the two notes which Cain Turner executed when he purchased the property by the act of April 11, 1876, indorsed in blank by Mrs. Ann Pitts. She testified that they had been given to Mr. Austin, the husband of Sallie Austin, but for what consideration she did not know. He first mortgaged them to Mr. John J. Dillon, then her own husband, Robert L. Pitts, took up the notes and took the land for the notes. She had had the notes in her possession since 1881. Mrs. Ann Pitts died in 1883, and R. L. Pitts, her husband, in September, 1905.

She testified that Cain Turner was a negro, who lived on their place; that he at one time had possession of the land involved in this suit; that after her husband, Robert L. Pitts, bought the land, Cain remained on this particular land, as a tenant, cultivating other lands of her husband. He left the land in 1881 or 1882. The land in controversy was originally given to Sallie Austin. When Mrs. Ann Pitts sold to Cain Turner, witness thought she received a small payment, the balance by notes to Mr. Austin. Her husband never signed away his rights to the gun club. A Mr. Crown was sent to him to have him do so, but he refused. Plaintiff testifies that the land in controversy was given to Mrs. Sallie Austin by her grandmother, Mrs. Ann Pitts. Some land was given by her to her son Rush D. Pitts, but she did not remember that any was given to her own husband. She may have given some, but he never mentioned it to her. The notes were given to Mr. Austin, and not to his wife. Being asked whether Mrs. Ann Pitts had not divided up during her lifetime, all the land that she owned, she answered:

"Not at that time."

Being asked whether she had not done so later, she answered:

"No, sir; she did not give her husband any that she knew of."

Being asked whether she knew that she had given Mrs. Austin some, she answered:

"Yes, sir; this particular piece."

Being asked whether she knew that she gave Rush D. Pitts some, she answered that she could not say positively, but that she thought that she had. She testified that, after the death of her mother-in-law, she and her husband had not occupied any part of the land; that Rush D. Pitts had occupied it, claiming it as his own. Asked whether it was not a fact that her husband got from his mother the west half of the northeast quarter of northeast quarter of section 20,

range 15, and whether she was not occupying that land herself, she answered:

"No, sir; if she gave it to him, she did not know anything about it."

When questioned about the taking up by her husband of Cain Turner's notes and taking the land for the notes, it developed that she merely presumed that the lands had been given for the notes; that what she believed on the subject was from reading of the letter of Austin to her husband, which she thought had been followed up by her husband having received the property for the notes; that her husband had never been given a deed for it; that her husband thought he had a deed to himself, until Mr. Flournoy took up the homestead. Cain Turner had not lived in Shreveport, or around Shreveport, for 10 or 12 years. She thought he lived on the place two years, one year that he claimed it as his own; then he rented the land from her husband. Questioned about Mrs. Sallie Austin having redeemed the property, witness said her husband had sent her brother, Rush D. Pitts, to redeem the whole tract. She heard her husband frequently say that Mrs. Austin could only sell her interest; that she bought; could not give a deed to the whole. Noel, a witness for the plaintiff, being asked whether he knew that the property of the Pitts had been divided up among them, a sort of partition, or an agreement of partition among themselves, said he did not know; he heard Rush Pitts and Bob Pitts say that they had ended it, and each one claimed different parts of the Stephen Pitts land. Bob Pitts claimed the Cain Turner tract, and worked it through a tenant. Cain Turner's land was 80 acres of land he thought. Bob Pitts and Rush Pitts said there was an understanding among the heirs of Mrs. Ann Pitts, some family arrangement about the partition of the lands. Witness understood the Cain Turner land had been given to Mrs. Austin. Mrs. Sallie Austin testified that the land in

question had been given to her by her grandmother after her grandfather's death. She knew that Cain Turner was on the land. Witness had never received anything from him. She did not know when Cain Turner left it; had lost sight of the property until Mr. Kendall came and told her that the property of hers had reverted to the state, and that he would redeem it for her, and she had done so. She thought she had a good title on the record up to the time of her grandmother's death, about 1883. She said the land belonged to witness. She supposed that Rush Pitts and Robert Pitts knew that her grandmother had given it to her. That a witness for defendants testified that, when the Kansas City Southern Road built its road in 1896, Rush Pitts and Robert Pitts told witness that they would not sell that land in section 20, because they said part of it belonged to Mrs. Sallie Austin. Both Robert and Rush Pitts said that the land belonged to the three of them; that they had an interest in it, and they would not sell the timber off of it; that it belonged to all three of them.

The plaintiff, Mrs. Addie Pitts, when recalled to the stand, testified, among other matters, that her husband had claimed other lands besides these 80 acres involved in the litigation; that he had an interest in his father's and his mother's land; he had an interest in other lands.

## Opinion.

The only matter with which we are called upon to deal is the claim of Mrs. Addie Pitts, wife of Robert L. Pitts, to one undivided half ownership of the property in litigation, on the ground that her husband had acquired the ownership of the same during his marriage with her, and her having acquired the one-half thereof as widow in community with him.

We do not think that her claim is well

founded. Her husband Robert L. Pitts, his brother, Rush Pitts, and his niece, Mrs. Sallie Austin, and Mrs. Lucy Joslyn, were heirs of Stephen D. Pitts and his wife, Mrs. Ann Pitts, and, as such, acquired ownership in all the properties which had belonged to them and the community between them. The property so owned by her husband was his individual separate property, held and owned jointly with his coheirs. With that fact as a starting point, and reading the various acts which occurred later with reference to the property left by Stephen D. Pitts and his wife in the light of that fact, we have no difficulty in reaching the conclusion that Robert L. Pitts acquired no new title to any part of that property during his marriage with the plaintiff. Mrs. Sallie Austin acted in behalf of herself and her coheirs, when she, as heir of Stephen D. Pitts and Mrs. Ann Pitts, redeemed the property which had been sold for taxes by the state, as the property of Mrs. Ann Pitts. In so doing, she lifted any cloud upon the title of the Pitts' heirs to that property resulting from adverse claim on the part of the state. When Rush D. Pitts purchased from Sam Benjamin and Isaac Barron, as adjudicatees at the tax sale made to them in 1889, all rights which they may have acquired therein, he, for the benefit of himself and his coheirs, lifted the cloud which rested on their title as heirs by the adverse claims of these parties. When Robert L. Pitts purchased from J. P. Flournoy all the right, interest, or claim which he had in and to the property involved in this litigation, he, for the benefit of himself and his coheirs, lifted the cloud which rested upon their title from any adverse claims on account of the paper title which Cain Turner had at one time to part of their property. Flournoy held only a quitclaim from Cain Turner of any rights which he had in the premises. Cain Turner made no cash payment when he purchased the property. The notes which he gave, as representing its price, were never paid by him. When on May 11, 1895, Flournoy took a quitclaim deed from Cain Turner for $75, he (Turner) had long since (as far back as 1883) abandoned the property and left the neighborhood, and the state had sold at tax sale on June 1, 1889, 230 acres of land, including these in the northwest quarter of section 20, township 20, range 15 west, assessed as belonging to the succession of Mrs. Ann Pitts, to Sam Benjamin and Isaac Barron. Those purchasers had already transferred the same property to Rush D. Pitts (for $38) all such rights and titles as they had acquired in and to the said property at said tax sale. The act was substantially a redemption of that property from those parties by a quitclaim deed from them, as has been seen. J. P. Flournoy on May 11, 1895, for $75, took a quitclaim deed from Cain Turner "for any rights which he had in 160 acres in section 18, being the northeast quarter and east half of northwest quarter of section 20, in township 20 north, range 15 west." And, as has also been seen, Flournoy on the 9th of July, 1895, sold the same property to P. J. Trezevant, for $600 cash, and on the same day (July 9, 1895) P. J. Trezevant, under the same description which he had acquired it, sold for $600 cash the same property to J. P. Flournoy, from whom he had just bought it. Flournoy, in repurchasing the property, did not seem to have had much confidence in the title which he had acquired from Cain Turner, for he took the precaution of having Robert L. Pitts serve as a witness to that sale. We do not think that was accidental. This was undoubtedly done for the purpose of estopping R. L. Pitts from subsequently contesting the title which he had himself just conveyed to Trezevant. On the same day that he had purchased the property from Trezevant,

Flournoy sold for $25 to R. L. Pitts the east half of the northwest quarter of section 20, township 20 north, range 15 west.

Kendall's interest in having the property redeemed from the state in favor of the heirs of Stephen D. Pitts and Mrs. Addie Pitts arose from the fact that he had taken a special mortgage from Rush D. Pitts on a part of that property. His signing the act from Mrs. Sallie Austin to Kerley was probably to enable her to convey to Kerley an unincumbered title to that property.

We think that the action of all of the parties who took part in these various transactions was to act in concert in disembarrassing the title of the heirs of Stephen D. Pitts and Mrs. Addie Pitts from adverse claims from any quarter to the property which they had inherited. We have no idea that Robert L. Pitts intended to obtain a new title to any part of that property to the prejudice of his coheirs.

We are of the opinion that the judgment appealed from is correct, and it is hereby affirmed.

LAND, J., recused on account of affinity with member of defendant club.